# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ELIZABETH HUSTON, individually and on behalf of all others similarly situated, | Case No. 1:21-cv-01196-MMM-JEH |
| Plaintiff, | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| HEARST COMMUNICATIONS, INC., | |
| Defendant. | |

J. Dominick Larry
nick@nicklarry.law
NICK LARRY LAW LLC
8 S Michigan Ave, Suite 2600
Chicago, IL 60603
Tel: (773) 694-4669
Fax: (773) 694-4691

*Local Counsel for Plaintiffs and the Putative Class*

Frank S. Hedin
fhedin@hedinhall.com
Arun G. Ravindran
aravindran@hedinhall.com
HEDIN HALL LLP
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: (305) 357-2107
Fax: (305) 200-8801

*Counsel for Plaintiff and the Putative Class*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

FACTUAL ALLEGATIONS .............................................................................................. 2

ILLINOIS' RIGHT OF PUBLICITY ACT ........................................................................ 6

APPLICABLE LEGAL STANDARD ................................................................................ 7

ARGUMENT ....................................................................................................................... 8

I.      The Complaint Adequately Alleges Defendant's "Public Use" or "Holding Out" of Plaintiff's Identity ................................................................................................. 8

II.     The Complaint Adequately Alleges that Defendant Used or Held Out Plaintiff's Identity for a "Commercial Purpose" Within the Meaning of the IRPA ................. 11

CONCLUSION ................................................................................................................. 18

**TABLE OF AUTHORITIES**

**Cases**

*Abrahamson v. Ill. Dep't of Prof'l Regulation,*
  153 Ill. 2d 76 (1992) ............................................................................... 7

*Ainsworth v. Century Supply Co.,*
  295 Ill. App. 3d 64, 691 N.E.2d 881 (2d Dist. 1998) ............................... 13

*Berger v. Capitol Color Mail, Inc.,*
  38 Va. Cir. 261 (1995) ............................................................................ 16

*Blair v. Nevada Landing P'ship,*
  369 Ill. App. 3d 318 (2d Dist. 2006) ..................................................... 6 n.1

*Brown v. ACMI Pop Div.,*
  375 Ill. App. 3d 276 (1st Dist. 2007) ..................................................... 13

*Brown v. Corbis Corp.,* No. 02 L 005872,
  2004 WL 5742324 (Ill. Cir. Ct. 2004), *aff'd by Brown,* 375 Ill. App. 3d at 285 .............. 16 n.5

*Bruso by Bruso v. Alexian Bros. Hosp.,*
  178 Ill.2d 445 (1997) .......................................................................... 14 n.4

*Carlson v. CSX Transp., Inc.,*
  758 F.3d 819 (7th Cir. 2014) ................................................................... 7

*DeLuna v. Burciaga,*
  223 Ill. 2d 49 (2006) ............................................................................... 7

*DeSmet ex rel. Estate of Hays v. Cnty. of Rock Island,*
  848 N.E. 2d 1030 (Ill. 2006) .................................................................. 17

*Dobrowolski v. Intelius, Inc.,*
  No. 17 CV 1406, 2017 WL 3720170 (N.D. Ill. Aug. 29, 2017) .................... 13, 14

*Dobrowolski v. Intelius, Inc.,*
  No. 17 CV 1406, 2018 WL 11185289 (N.D. Ill. May 21, 2018) .................... 10, 11

*Doe v. Flava Works, Inc.,* 2014 IL App (1st) 121491-U .................................. 13

*In re M.T.,* 221 Ill.2d 517 (2006) .................................................................. 9

*Jordan v. Dominick's Finer Foods,*
  No. 10 C 407, 2015 WL 4498909 (N.D. Ill. July 23, 2015) ........................... 8

*Lukis v. Whitepages Inc.*,
   454 F. Supp. 3d 746 (N.D. Ill. 2020), *reconsideration denied*,
   No. 19 C 4871, 2020 WL 6287369 (N.D. Ill. Oct. 27, 2020)................................. 12

*Lukis v. Whitepages Inc.*,
   No. 19 C 4871, 2020 WL 6287369 (N.D. Ill. Oct. 27, 2020)................................. 17

*MetLife Inv'rs USA Ins. Co. v. Zeidman*,
   734 F. Supp. 2d 304 (E.D.N.Y. 2010), *aff'd sub nom. Pratt*, 442 F. App'x 589..................... 10

*People v. Holm*,
   2014 IL App (3d) 130582 ......................................................................... 8

*People v. Lewis*,
   223 Ill. 2d 393 (2006) ........................................................................... 8

*People v. Tilton*, 357 Ill. 47, 50, 191 N.E. 257 (1934).................................... 10

*Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069 (7th Cir. 2013) ........................... 11

*Thompson v. Getty Images (US), Inc.*,
   No. 13 C 1063, 2013 WL 3321612 (N.D. Ill. July 1, 2013) .......................... 11, 15

*Trannel v. Prairie Ridge Media, Inc.*, 2013 IL App (2d) 120725.................................. 9

*United Lab'ys, Inc. v. Savaiano*,
   No. 06 C 1442, 2007 WL 4557095 (N.D. Ill. Dec. 21, 2007) .......................... 10

*U.S. Fire Ins. Co. v. Barker Car Rental*,
   132 F.3d 1153 (7th Cir. 1997) ............................................................... 7, 16

*U.S. News & World Report, Inc. v. Avrahami*,
   No. 95-1318, 1996 WL 1065557 (Cir. Ct. Va. June 13, 1996).......................... 12, 17

*Woodard v. Victory Records, Inc.*,
   No. 11 C 7594, 2016 WL 1270423 (N.D. Ill. Mar. 31, 2016) .......................... 14

**Statutes**

Fed. R. Civ. P. 12............................................................................. 7

Illinois Right of Publicity Act,
   765 ILCS 1075/1, *et seq.*.................................................................. *passim*

Va. Code Sec. 8.01-40(A)........................................................................ 16

**Other Authorities**

McCarthy, 1 Rights of Publicity and Privacy (2d ed.)................................................................. 14

Restatement (Second) of Torts § 652D cmt. a (1977) ................................................................ 10

Restatement (Third) of Unfair Competition § 47 (1995)............................................................ 14

Webster's Third New International Dictionary (1993)................................................................. 9

Plaintiff Elizabeth Huston submits this response in opposition to the motion to dismiss (ECF No. 10 (the "Motion" or "Mot.")) filed by Defendant Hearst Communications, Inc. ("Hearst").

## **INTRODUCTION**

Unsatisfied with subscription and advertising revenue alone, Hearst also sells (on the open market, to the public at large) lists that contain the names and addresses (as well as myriad other categories of highly sensitive personal information) of all of the subscribers to all of the company's various magazine titles, alongside the title(s) of the magazine(s) to which each of them subscribed. Before it monetized its customers' identities in this way, Hearst did not ask for Plaintiff's consent or the consent of any of its other subscribers who reside in Illinois. The Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1, *et seq.*, clearly prohibits what Hearst has done.

In the Motion, Hearst argues that the IRPA only prohibits the "public" unauthorized "use" or "holding out" of an individual's identity, and that the Complaint fails to allege the company used or held out Plaintiff's identity publicly. The argument is completely without merit. IRPA's definition of "commercial purpose" – "the public use or holding out of an individual's identity" – is written disjunctively, such that the word "public" modifies the word "use" but not the phrase "holding out." Thus, an unauthorized, non-public holding out of Plaintiff's identity by Hearst (either on a mailing list it sold or in connection with its past sale of a magazine subscription to Plaintiff) is actionable no less than an unauthorized public use of Plaintiff's identity on or in connection with Hearst's sale or offering for sale of those same products, goods, or merchandise. In any event, the Complaint adequately alleges both; that Hearst both publicly used *and* publicly held out Plaintiff's identity in this case by including her name and subscription details (and various other personal information) on the mailing lists it sold on the open market to the public at large.

1

The Motion also suggests that an unauthorized endorsement of a defendant's product or service is required to state an IRPA claim. This is also baseless. In addition to false endorsements, the statute also broadly prohibits, *inter alia*, any unauthorized public use or holding out of an individual's identity on or in connection with a defendant's sale of (or an offer to sell) a good, product, merchandise, or service. Here, the Complaint adequately alleges that Hearst publicly used or held out Plaintiff's identity – her name, coupled with other uniquely identifying personal and subscription-related information – both by selling the subscriber lists (which are goods, products, or merchandise) on which Plaintiff's name appeared, as well as by using Plaintiff's name on those lists "in connection with" her prior purchase of *Good Housekeeping* magazine (also a good, product, or merchandise) from Defendant.

The Complaint states a claim, and the Motion should be denied.

## FACTUAL ALLEGATIONS

To supplement its revenues during the time period relevant to this action, Hearst publicly used and held out Plaintiff's and the other Class members' identities for commercial purposes when it offered for sale and sold mailing lists that identified, by name, address, and other personal attributes, Plaintiff and every other Illinois subscriber to its magazine publications, including *Good Housekeeping* magazine to which Plaintiff subscribed. (Compl. ¶ 1.) Defendant's offers to sell its mailing lists were directed to the community at large, and indeed Defendant sold these lists to any member of the public willing to pay for them, including data miners, data aggregators, data appenders, data cooperatives, list brokers, aggressive marketing companies, political organizations, non-profit companies, and various other parties. (*Id.*) Hearst's public use and holding out of its subscribers' identities for commercial purposes is not only unlawful, it is also dangerous because it allows any member of the public willing to purchase this data to target

particular subscribers, including vulnerable members of society, using their identity, interests and other demographic data. (*Id.* ¶ 6.)

Plaintiff and each proposed Class member purchased from Hearst, while residing in Illinois, a subscription to one of Hearst's publications (in Plaintiff's case, a subscription to *Good Housekeeping* magazine). (*Id.* ¶ 48.) Prior to and at the time Plaintiff and the other proposed Class members subscribed to Hearst's publications, Hearst did not notify them that it would publicly use their identities for commercial purposes by selling or offering to sell their Personal Reading Information—their full names, home addresses, and the titles of the publications subscribed to— as well as myriad other personal and demographic information such as their gender, age, ethnicity, income, political party, religion, and charitable donation history on the open market to any member of the public willing to pay for it, and neither Plaintiff nor any other proposed Class member has never consented (in writing or otherwise) to Hearst doing so. (*Id.* ¶ 49.)

After Plaintiff purchased a subscription to *Good Housekeeping* from Hearst, and during the relevant statutory period, Hearst, either directly or through one or more intermediary acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), offered for sale to the community at large mailing lists containing Plaintiff's Personal Reading Information (which identified her as an individual to whom Hearst had sold a Good Housekeeping subscription) and sold those lists on the open market to any member of the public willing to purchase them, including to data aggregators, data appenders, data cooperatives, and various other persons interested in buying it to contact Hearst subscribers, without first obtaining Plaintiff's written consent or even giving her prior notice of its public use and holding out of her identity in this way. (*Id.* ¶ 50.) Likewise, during the relevant statutory period, Hearst offered for sale to the community at large and sold on the open market to any member of the public

interested in purchasing, mailing lists identifying the names and addresses (among other Personal Reading Information) of all of the individuals who had purchased subscriptions to its various publications, including Plaintiff and each Proposed Class member. (*Id.*)

Documented evidence corroborates these factual allegations. For example, Hearst, either directly or through one or more intermediary acting on its behalf and at its direction, offers to sell to the community at large, and then sells to any member of the public interested in purchasing, the mailing list titled "GOOD HOUSEKEEPING Mailing List", which contains the full name, home address, and title of the publication subscribed to (collectively "Personal Reading Information") – as well as myriad other personally identifying attributes and demographic information such as gender, age, ethnicity, income, political party, religion, and charitable donation history-of each of the 1,715,229 active U.S. subscribers to Good Housekeeping magazine (including Plaintiff and each member of the Class) at a base price of "$115.00/M [per thousand]," (i.e., 11.5 cents apiece), as shown in the screenshot below from list broker NextMark, Inc.'s website:



(*Id.* ¶ 2; *id.*, Ex. A). Hearst also sells a list comprised of the PRI of all subscribers to all of its publications, in a so-called "masterfile," via the same intermediaries (including NextMark). (*Id.* ¶ 3; *id.*, Ex. B.)

Both the subscriber mailing lists that Hearst sold and offered to sell, as well as the subscriptions to its various publications that it had previously sold to Plaintiff and the proposed Class members (the titles of which were listed on the subscriber mailing lists alongside the names of the persons who purchased subscriptions to the corresponding publications), constituted "products," "merchandise," or "goods" within the meaning of the IRPA. (*See id.* ¶¶ 53, 55.) Hearst sold these subscriber mailing lists on the open market to any member of the public willing to pay for them. (*See id.* ¶ 54.)

By selling and offering to sell mailing lists on which Plaintiff's and the other Class members' names appeared (which identified each of them as having purchased a subscription to a particular publication sold by Hearst) to the community at large, to any member of the public willing to pay for them, without first asking for much less obtaining Plaintiff's or the other Class members' prior written consent, Hearst, either directly or through one or more intermediary acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), used Plaintiff's and the other Class members' identities for commercial purposes during their lifetimes in violation of section 30(a) of the IRPA. See 765 ILCS 1075/30(a). (*Id.* ¶ 57.)

Additionally, Hearst's sales and offers to sell mailing lists on which Plaintiff's and the other Class members' names appeared constituted "the public use or holding out of [these] individual[s'] identit[ies] . . . in connection with the offering for sale or sale of a product, merchandise, [or] good . . .," 765 ILCS 1075/5. (*Id.* ¶ 56.) Specifically, because the mailing lists

5

identified by name individuals who had previously purchased subscriptions to particular publications from Hearst, Hearst's use of Plaintiff's and the other Class members' identities on the mailing lists it sold and offered to sell to the community at large was done in connection with its prior sales of a *Good Housekeeping* subscription to Plaintiff and subscriptions to its various publications to the other members of the Class. (*Id.*) Accordingly, Hearst, either directly or through one or more intermediary acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), used Plaintiff's and the Class members' identities "for commercial purposes" within the meaning of the IRPA, 765 ILCS 1075/5. (*Id.*)

As a result of Hearst's nonconsensual public use and holding out of their identities for commercial purposes, Plaintiff and the members of the Class have suffered violations of their rights of publicity. (*Id.* ¶ 58.)

## ILLINOIS' RIGHT OF PUBLICITY ACT

Since 1999, the IRPA has protected each individual's "right to control and to choose whether and how to use [his or her] identity for commercial purposes[.]" 765 ILCS 1075/10.[1] Pursuant to the IRPA, "[a] person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons[.]" *Id.* § 1075/30(a).

"Identity" means "any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener," including, *inter alia*, an individual's name. *Id.* § 1075/5. "Commercial purpose" is defined as "the public use or holding out of an individual's identity (i)

---

[1] "After December 31, 1998, the common-law tort of appropriation of one's likeness ceased to exist. The [IRPA], effective January 1, 1999, completely replaced the common-law tort of appropriation of likeness[.]" *Blair v. Nevada Landing P'ship*, 369 Ill. App. 3d 318, 322–23 (2d Dist. 2006).

on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." *Id.*[2]

## APPLICABLE LEGAL STANDARD

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "must construe [the complaint] in the light most favorable to plaintiff, accept well-pleaded facts as true, and draw all inferences in the plaintiff's favor." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014).

When interpreting state law, a federal court applies the rules of statutory construction applicable under state law. *See U.S. Fire Ins. Co. v. Barker Car Rental*, 132 F.3d 1153, 1156 (7th Cir. 1997) ("[W]e must apply the same rules of statutory construction that the Supreme Court of Illinois would apply if it were faced with the same task."). "In Illinois, the applicable principles of statutory construction are well established. The primary rule is that courts should ascertain and give effect to the intention of the legislature. To achieve that goal, we must regard the language of the statute as the best indication of legislative intent." *U.S. Fire Ins.*, 132 F.3d at 1156 (citing *Abrahamson v. Ill. Dep't of Prof'l Regulation*, 153 Ill. 2d 76, 90 (1992)); *see also DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006) ("When the language of the statute is clear, it must be applied as written without resort to aids or tools of interpretation."). Courts "will not depart from the plain

---

[2]     The IRPA "does not apply to," among other conduct not relevant to this case, "use of an individual's identity in an attempt to portray, describe, or impersonate that individual in a live performance, a single and original work of fine art, play, book, article, musical work, film, radio, television, or other audio, visual, or audio-visual work, provided that the performance, work, play, book, article, or film does not constitute in and of itself a commercial advertisement for a product, merchandise, goods, or services[.]" 765 ILCS 1075/35(b)(1).

statutory language by reading into the statute exceptions, limitations, or conditions that the legislature did not express." *People v. Lewis*, 223 Ill. 2d 393, 402 (2006) (citation omitted).

Where a statute requires interpretation and the exact legislative intent cannot be ascertained from the plain and ordinary meaning of its language alone, the Court is guided by the canons of statutory construction and by legislative history, *People v. Holm*, 2014 IL App (3d) 130582, ¶ 15, and also by the practical consequences of the competing statutory interpretations, *Jordan v. Dominick's Finer Foods*, No. 10 C 407, 2015 WL 4498909, at *2 (N.D. Ill. July 23, 2015).

## ARGUMENT

The Complaint alleges that Hearst sold and offered to sell, to the public at large and without obtaining anyone's consent, mailing lists on which Plaintiff's (and every other Hearst subscriber's) name, address, and other sensitive personal information, as well as the title of the magazine subscription to which Plaintiff (and every other subscriber) had previously purchased from Hearst, all appeared. These factual allegations demonstrate that Hearst "publicly used" and "h[eld] out" Plaintiff's (and every other proposed Class member's) "identity" for "commercial purposes" without consent, easily stating a claim for violation of the IRPA. The Motion should be denied.

## I.     The Complaint Adequately Alleges Defendant's "Public Use" or "Holding Out" of Plaintiff's Identity

Defendant contends the Complaint fails to state a claim on the grounds that "she does not allege any 'public use or holding out' of her name" within the meaning of Section 5 of the IRPA. (Mot. at 5 (quoting 765 ILCS 1075/5).) According to Defendant, "Plaintiff does not identify a single specific mailing list purportedly containing her name—something that, to meet the statutory requirements, would be known to an individual whose identity had actually been held out to the public for a commercial purpose under the Act." (Mot. at 5.) The argument fails for two primary reasons.

First, the term "commercial purpose" is defined disjunctively as a "public use or holding out of an individual's identity," such that the word "public" modifies the word "use" but not the phrase "holding out." Thus, the "holding out" of an individual's identity need not be "public" to be actionable. *See Trannel v. Prairie Ridge Media, Inc.*, 2013 IL App (2d) 120725, ¶ 21 ("The statute addresses the 'public use' *or* 'holding out' of an individual's identity. 'Holding out' is not defined, but it must mean something other than 'public use.'" (citing *In re M.T.,* 221 Ill.2d 517, 524 (2006) ("Whenever possible, each word [of a statute] should be construed to avoid rendering it superfluous.")). Here, even assuming Hearst's sales of subscriber lists on which Plaintiff's name appeared did not constitute a "public use" of Plaintiff's identity, Hearst's was nonetheless "holding out" Plaintiff as its customer – namely, a purchaser of a *Good Housekeeping* subscription – by including Plaintiff's name and other personal and subscription-related details on the subject subscriber lists. *See Trannel*, 2013 IL App (2d) 120725, ¶ 21 ("The only applicable dictionary definition of 'hold out' is 'to make out to be: 'represent.'" (quoting Webster's Third New International Dictionary 1079 (1993)); *see also, e.g., id.* (reversing trial court's grant of summary judgment for defendant on plaintiff's IRPA claim, stating that "the [IRPA] prohibits the holding out – meaning the representation – of an individual's identity on or in connection with certain activities," and explaining that, even though the defendant did not "publicly use" plaintiff's identity, the IRPA nonetheless applied because "in deliberately placing plaintiff's and her daughter's identities on the cover, defendant was representing, or holding out, plaintiff's and her daughter's identities").

Second, even if "public" modified both "use" and "holding out" – and that is not the case – the Complaint nonetheless alleges that Defendant publicly used and publicly held out Plaintiff's identity because the mailing lists on which Plaintiff's name was disclosed, in connection with her

prior purchase of a *Good Housekeeping* subscription, were offered for sale and in fact sold on the open market on the Internet to anyone willing to pay for them. These factual allegations plausibly demonstrate that Hearst "publicly" used and "publicly" held out Plaintiff's identity within the meaning of Illinois law. *See United Lab'ys, Inc. v. Savaiano*, No. 06 C 1442, 2007 WL 4557095, at *10 (N.D. Ill. Dec. 21, 2007) ("According to the Restatement (Second) of Torts, to which Illinois courts have turned for guidance[,] publicity 'means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.") (quoting Restatement (Second) of Torts § 652D cmt. a (1977) (citations omitted)); *c.f. People v. Tilton*, 357 Ill. 47, 50, 191 N.E. 257, 258–59 (1934) (explaining that the offering of physician services by an unlicensed individual on the commercial market to the general public is a "public holding out" criminalized under Medical Practice Act.)

Grasping at straws, Defendant nonetheless claims that the Complaint's "allegations that Hearst made mailing lists containing Plaintiff's names available to anyone 'willing to pay' (Compl. ¶¶ 1, 33) describe, at best, the provision of her name to other entities pursuant to private contracts," which "do not constitute 'facts to plausibly infer that she was identified to a reasonable audience by the defendant's use of her name or likeness.'" (Mot. at 8-9 (quoting *Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, 2018 WL 11185289, at *7 (N.D. Ill. May 21, 2018); *MetLife Inv'rs USA Ins. Co. v. Zeidman*, 734 F. Supp. 2d 304, 311-12 (E.D.N.Y. 2010), *aff'd sub nom*. *Pratt*, 442 F. App'x 589, 591)); *see also* Mot. at 9 (contending that its sales of "the mailing lists about which Plaintiff complains . . . are not a 'public' use or holding out of her 'identity', but rather, as alleged by Plaintiff, a private contractual use between Hearst and the renter of the mailing lists.").) The argument is nonsense. Nowhere in the Complaint does Plaintiff allege that the lists on which

Plaintiff's name appeared were only sold by Hearst "pursuant to private contracts" between "Hearst and the renter." In fact, the Complaint alleges the exact opposite – that Hearst both publicly offered to sell and in fact sold the list to any member of the public willing to pay for the list, pursuant to Hearst's publicly advertised prices. (Compl. ¶¶ 2-3, 53-58.)

Moreover, if Hearst were correct that "public" use or holding out is lacking because its use of Plaintiff's and the proposed Class members' identities was seen only by its list buyers, there would have been no need for the IRPA to specifically exclude the use of one's identity in books, movies, and other creative works. *See* 765 ILCS 1075/35(b)(1). Use of an identity in those circumstances, after all, would only be seen by those individuals who—like Hearst's mailing list purchasers—purchased, or paid the requisite license to view, the creative works. Because Hearst's reading of the IRPA would render its exclusion superfluous, the Court should reject it. *See Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1077 (7th Cir. 2013) ("When we do not have statutory definitions available, we accord words and phrases their ordinary and natural meaning and avoid rendering them meaningless, redundant, or superfluous.").

Ultimately, at this stage of the case, the factual allegations of the Complaint must be taken as true – not as Defendant has recast them in the Motion to better serve its litigation objectives – and all reasonable inferences drawn in Plaintiff's (not Hearst's) favor.

## II.   The Complaint Adequately Alleges that Defendant Used or Held Out Plaintiff's Identity for a "Commercial Purpose" Within the Meaning of the IRPA

Hearst next argues that "Plaintiff also fails to allege that any purported public use of her name was for a purpose prohibited by the IRPA'" because the Complaint's "allegations demonstrate that plaintiff's identity is not used to promote a separate product,' but instead as 'part of the product offered for sale[.]" (Mot. at 6 (citing *Dobrowolski*, 2018 WL 11185289, at *3; *Thompson v. Getty Images (US), Inc.*, No. 13 C 1063, 2013 WL 3321612, at *2 (N.D. Ill. July 1,

2013); *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746, 760-61 (N.D. Ill. 2020), *reconsideration denied*, No. 19 C 4871, 2020 WL 6287369 (N.D. Ill. Oct. 27, 2020); *U.S. News & World Report, Inc. v. Avrahami*, No. 95-1318, 1996 WL 1065557, at *7 (Cir. Ct. Va. June 13, 1996)).) This is remarkably disingenuous.

The IRPA defines "commercial purpose" as "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." 765 ILCS 1075/5.

Plaintiff's claim does not, as Defendant would have the Court believe, arise under the second "commercial purpose" prong (requiring the use or holding out of a plaintiff's identity "for purposes of advertising or promoting products, merchandise, goods, or services"). Rather, Plaintiff's claim arises entirely from the first "commercial purpose" prong, which simply requires a defendant's use or holding out of her identity "on or in connection with the offering for sale or sale of a product, merchandise, goods, or services." *Id.*; Compl. ¶¶ 56-57. And as previously discussed, the Complaint adequately alleges Defendant's use or holding out of Plaintiff's identity both "on . . . a product, merchandise, goods, or services" – i.e., the lists sold by Hearst on the open market – as well as "in connection with" Hearst's "sale of" of "a product[], merchandise, good, or service[]" to Plaintiff – i.e., the *Good Housekeeping* subscription that Plaintiff had previously purchased from Hearst.

But even if Plaintiff's claim arose solely from the Complaint's allegations that Defendant publicly used or held out Plaintiff's identity "on . . . a product, merchandise, goods, or services" – i.e., the lists sold by Hearst on the open market – these allegations, standing alone, sufficiently demonstrate Hearst's unauthorized use of Plaintiff's likeness for a "commercial purpose" under

the definition's first prong, notwithstanding the absence of any allegations concerning a purpose of promoting or advertising a separate product. *See, e.g., Brown v. ACMI Pop Div.*, 375 Ill. App. 3d 276 (1st Dist. 2007) (affirming the denial of a motion to dismiss and finding a commercial purpose sufficient for a right of publicity cause of action where defendant used images of plaintiff on defendant's website); *Ainsworth v. Century Supply Co.*, 295 Ill. App. 3d 64, 691 N.E.2d 881 (2d Dist. 1998) (reversing the dismissal of complaint and the grant of summary judgment in favor of Defendant because Defendant used Plaintiff's images in a television commercial for which it was paid and received a commercial benefit); *Doe v. Flava Works, Inc.*, 2014 IL App (1st) 121491-U (affirming trial court decision finding that defendants violated the IRPA by using plaintiff's identity for a commercial purpose because plaintiff's image appeared on two parts of an adult film that was sold to the public on DVD).

Plaintiff's understanding of the statute's "commercial purpose" requirement is based on the plain statutory language and is consistent with the reasoning of nearly every court to have addressed the subject.[3] In fact, the court in *Dobrowolski,* to which the Motion repeatedly cites, itself explicitly stated that the "IRPA does not require that the commercial purpose be an apparent endorsement of the defendant's product or service." *Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, 2017 WL 3720170, at *8 (N.D. Ill. Aug. 29, 2017); *see also* McCarthy, 1 Rights of Publicity and Privacy § 5:19 (2d ed.) ("The Restatement emphasizes that infringement of the right of publicity

---

[3]    Plaintiff's interpretation is also consistent with canons of statutory construction. As with its public-use argument, Hearst's contention that Plaintiff must show that Hearst used her identity to promote a separate product or service would render the IRPA's creative-works exception superfluous. That exception permits uses of identities in books, movies, and other creative works, *unless* the creative work is itself an advertisement for a good or service. *See* 765 ILCS 1075/35(b)(1). The exception would be superfluous if, as Hearst contends, liability was limited to the use of an identity to separately promote a good or service.

is not merely a form of false advertising or false endorsement. This is because proof of falsity, deception or confusion is not required for infringement of the right of publicity. Using a person's identity merely to draw attention to a product or advertisement is an infringement."); Restatement (Third) of Unfair Competition § 47 (1995) (For a right of publicity claim, "[p]roof that prospective purchasers are likely to believe that the identified person endorses or sponsors the user's goods or services is not required for the imposition of liability.").[4] "IRPA's definition of 'commercial purpose' is broad, 765 ILCS 1075/5, and the act contains no endorsement requirement. Neither does IRPA have a falsity requirement." *Dobrowolski,* 2017 WL 3720170, at *8 (citing *Woodard v. Victory Records, Inc.*, No. 11 C 7594, 2016 WL 1270423, at *10 (N.D. Ill. Mar. 31, 2016); McCarthy, 1 Rights of Publicity and Privacy § 6:56 (2d ed.) ("In accordance with the law nationwide, a claim under the Illinois statute has no requirement of falsity or confusion.")). Thus, Plaintiff "need not allege an endorsement or false endorsement to state an IRPA claim." *Id.*

Notably, the decisions cited in the Motion for the ill-founded idea that an IRPA claim necessarily requires an apparent endorsement of a separate product or service are readily distinguishable because the plaintiffs in those cases alleged IRPA claims under the second prong ("for purposes of advertising or promoting products, merchandise, goods, or services") of the IRPA's "commercial purpose" definition. *See Dobrowolski,* Dkt. No. 44 at 13 (First Amended Complaint alleging at paragraphs 49 and 53 that "[t]he Illinois Right of Publicity Act prohibits using a person's name, photograph, image, or likeness for the purpose of advertising or promoting products, merchandise, goods, or services without written consent," and that "Intelius's

---

[4]     "The legislative history merely indicates that endorsements were the most prevalent example of IRPA''s potential application and that the debates also touched on other concerns." *Dobrowolski,* 2017 WL 3720170, at *8. Ultimately, "[t]he best evidence of the legislature's intent is the language of the statute itself." *Bruso by Bruso v. Alexian Bros. Hosp.*, 178 Ill.2d 445, 451 (1997).

advertisements have a commercial purpose in that the online advertisements promote the Intelius website and the reports it sells to the public."); *Lukis,* Dkt. No. 1-1 at 11, 13 (Complaint alleging at paragraphs 22 and 39 that "[t]he Illinois Right of Publicity Act prohibits using a person's name, photograph, image, or likeness for the purpose of advertising or promoting products, merchandise, goods, or services without written consent," and that "Whitepages uses [plaintiff's] name, age, city of domicile, and the identity of her relatives in advertisements on the Whitepages website"). Because the plaintiffs in *Dobrowolski* and *Lukis* both pursued IRPA claims under the second prong of the "commercial purpose" definition, whereas Plaintiff's claim arises under the first prong, neither *Dobrowolski* nor *Lukis* has any bearing on the issues presented in Defendant's Motion.

Hearst also cites to *Thompson* for the idea that an endorsement of a separate product or service is the only type of commercial purpose that the IRPA regulates. But *Thompson*, too, is totally inapposite. In granting the defendant's motion for summary judgment, the Court held that the defendant did not violate the IRPA when it "made [plaintiff's] photos available for commercial use" because the product in question (the photograph depicting the plaintiff that the defendant used on its website) was licensed, and what the defendant was selling was not the photograph itself but the license to use the photograph, pursuant to an arrangement to which the plaintiff had consented. *See Thompson,* 2013 WL 3321612, at *3 ("Thompson contends that even though Getty Images licenses photographs of him for editorial use only, it should nonetheless be liable for any unauthorized commercial use by its customers. In other words, Thompson asks the Court to impose liability on Getty Images because an end-user might choose to breach its license, regardless of the contractual limitations Getty Images imposes on the license."). Thus, the defendant's use of the plaintiff's photograph on its website did not constitute a use of the plaintiff's likeness on a "product[], merchandise[], good[], or service[]" without consent. This is a far cry from the situation

presented here. In this case, the Complaint specifically alleges that Defendant sold the list (a product, good, or merchandise) on which Plaintiff's identity was disclosed to the public at large, i.e., to anyone willing to purchase it, without obtaining Plaintiff's consent (via license or otherwise).[5]

Defendant says that the court in *Avrahami*, the "only court . . . to have ever considered whether the inclusion of a name as part of a direct mail mailing list violated a state Right of Publicity Statute (Virginia's)[,] soundly rejected a similar claim." (Mot. at 7.). But the Virginia statute at issue in *Avrahami* differs from the IRPA in several critical respects. Most saliently, unlike IRPA which explicitly defines "commercial purpose," the Virginia statute, Va. Code Sec. 8.01-40(A), does not define the term "purposes of trade." *See Berger v. Capitol Color Mail, Inc.*, 38 Va. Cir. 261 (1995). The court in *Avrahami* did not analyze Virginia's right of publicity statute, or why the sale of a mailing list containing subscriber information falls outside of the statutory ambit,

---

[5]     *Thompson* was also wrongly decided insofar as it holds that an IRPA claim is only actionable where a defendant's unauthorized use of a plaintiff's identity is done for the purpose of promoting or endorsing a separate product or service. In fact, at the time *Thompson* was decided, the Illinois Court of Appeals had previously affirmed a trial court decision to deny a motion to dismiss an IRPA claim on facts that were materially indistinguishable from those in *Thompson*. *See Brown v. Corbis Corp.*, No. 02 L 005872, 2004 WL 5742324, at *3 (Ill. Cir. Ct. 2004) (in IRPA case where James Brown, a well-known recording artist, sued Corbis Corporation alleging that Corbis' internet sale of photographs of Brown violated his right of publicity under the IRPA, trial court held that Corbis was using Brown's image to sell a "product" and that he had sufficiently stated a claim under the IRPA), *affirmed by Brown*, 375 Ill. App. 3d at 285. The court in *Thompson* acknowledged the contrary decision in *Brown* (and the Illinois Court of Appeals' affirmance of that decision) but nevertheless declined to adopt *Brown*'s reasoning. This Court should adopt the reasoning of the Illinois Court of Appeals in *Brown* (a far better predictor than the federal district court's decision in *Thompson* of how the Illinois Supreme Court would resolve this question) and hold, consistent with the legion of other post-*Thompson* decisions cited above, that the IRPA does not require that the commercial purpose behind an unauthorized use of an individual's identity on a product, good, or service be an apparent endorsement of a separate product, good, or service in order for the statute's protections to apply. *See U.S. Fire Ins. Co.*, 132 F.3d at 1156 ("[W]e must, of course, interpret the statute as we believe that the Supreme Court of Illinois would interpret it if the matter were before that court today.").

16

stating only in conclusory fashion (and incorrectly): "The inclusion of an individual name as part of a mailing list constitutes neither a use for an advertising purpose nor a use for the purpose of trade, as defined by the statute." 1996 WL 1065576 at *7. But, as mentioned, Virginia's right of publicity statute does not define in any sense what constitutes "purposes of trade." Contrary to Defendant's assertion, *Avrahami* adds nothing to the issue of whether Plaintiff has stated an IRPA claim.[6]

Finally, even if the Court were to hold that the IRPA requires the use of Plaintiff's identity to promote a separate product – and that is not the case, as the statute's plain language and the authorities cited above confirm – the allegations of the Complaint nonetheless plausibly demonstrate that Hearst's use or holding out of Plaintiff's name on the mailing lists that it offered for sale and sold to the general public, alongside the title (*Good Housekeeping*) of the magazine that she had previously purchased from Hearst, served the purpose of endorsing or promoting a separate product – namely, *Good Housekeeping* magazine. *See Lukis v. Whitepages Inc.*, No. 19 C 4871, 2020 WL 6287369, at *4 (N.D. Ill. Oct. 27, 2020) ("So, even if IRPA liability required that the defendant use the plaintiff's identity to promote a 'separate product'—a matter that is far from clear[]—the free previews promote a subscription service that provides information separate from the aspects of a person's identity revealed in the free previews." (citing *See DeSmet ex rel. Estate of Hays v. Cnty. of Rock Island*, 848 N.E. 2d 1030, 1039 (Ill. 2006) (holding that "[w]here an enactment is clear and unambiguous," a court is "not at liberty to depart from the plain language

---

[6]      Seemingly, the most important consideration to the court in *Avrahami* was the plaintiff's litigation tactics. The court found that the plaintiff had "unclean hands." The decisions specifically noted that the plaintiff had filed the case for publicity reasons and had hired public relations and media firms to advise him during the litigation, that the plaintiff was unemployed and present in the United States on an expiring tourist visa, and specifically noted that the plaintiff's stated reason for bringing the litigation in the first place was "to meet chicks." 38 Va. Cir. 261, *5-6 (1995).

and meaning of the statute by reading into it exceptions, limitations or conditions that the legislature did not express")))

Thus, in this case, unlike in *Dobrowolski, Lukis, Thompson,* or *Avrahami*, Plaintiff's claim here arises entirely under the first "commercial purpose" prong, which specifically concerns public use or holding out of an individual's name "on or in connection with the offering for sale or sale of a product, merchandise, goods, or services." The Complaint alleges that Defendant's magazine subscription purchaser list and the underlying magazine subscription that Plaintiff purchased from Hearst are each a "product[]," piece of "merchandise," or a "good[]." And the Complaint specifically alleges that Defendant publicly used or held out Plaintiff's name "on" the subscription purchaser list it sold, and that such use or holding out of her name on the list was "in connection with" Hearst's past "sale" of a magazine subscription to Plaintiff – a product separate and distinct from the subscriber lists themselves – all without Plaintiff's consent. These allegations adequately state a claim for violation of the IRPA against Hearst.[7]

## **CONCLUSION**

For the foregoing reasons, the Motion to Dismiss should be denied.

**ELIZABETH HUSTON**, individually and
on behalf of all others similarly situated,

By: s/ J. Dominick Larry
              One of Plaintiff's Attorneys

J. Dominick Larry
nick@nicklarry.law
NICK LARRY LAW LLC
8 S Michigan Ave, Suite 2600
Chicago, IL 60603
Tel: (773) 694-4669
*Local Counsel for Plaintiffs and the Putative Class*

---

[7] Notably, the Motion cites to no legal authority demonstrating that a defendant's use or holding out of an individual's identity in connection with the defendant's past sale of a product to the plaintiff is not actionable under the IRPA.

Frank S. Hedin
fhedin@hedinhall.com
Arun G. Ravindran
aravindran@hedinhall.com
HEDIN HALL LLP
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: (305) 357-2107
Fax: (305) 200-8801

*Counsel for Plaintiff and the Putative Class*

## TYPE VOLUME LIMIT CERTIFICATION

     Pursuant to Civ. L.R. 7.1(B)(4), the undersigned counsel certifies that the preceding memorandum of law complies with the Court's 7,000-word and 45,000-character limitations, by containing 6,768 words (including all captions, tables, headings, signatures, and certifications) and 42,474 characters (including spaces).

                            s/ J. Dominick Larry

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document filed through the ECF system will be sent electronically to counsel of record on October 28, 2021.

s/ J. Dominick Larry