IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ELIZABETH HUSTON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HEARST COMMUNICATIONS, INC.,<br><br>Defendant. | No. 1:21-cv-01196 (MMM)(JEH) |

**DEFENDANT HEARST COMMUNICATIONS, INC.'S
REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF ITS MOTION TO DISMISS**

Jonathan R. Donnellan
Andrea R. Butler
Kristen L. Hauser
THE HEARST CORPORATION
   Office of General Counsel
300 West 57th Street, 40th Floor
New York, New York 10019
Tel: (212) 649-2484
Fax: (212) 554-7000
Email: abutler@hearst.com
Email: khauser@hearst.com

Harold C. Hirshman
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, IL 60606-6361
Tel.: (312) 876-8025
Email: Harold.hirshman@dentons.com

*Attorneys for Defendant Hearst
Communications, Inc.*

## INTRODUCTION

Plaintiff's Response in Opposition ("Pl. Opp.") to Defendant Hearst Communications, Inc.'s ("Hearst's") Motion to Dismiss (ECF No. 13) primarily relies on two flawed arguments to extend the reach of the Illinois Right of Publicity Act, 765 Ill. Comp. Stat. 1075, (the "IRPA") beyond its statutory purpose.[1]

*First*, Plaintiff acknowledges (as she must) that in reading a statute, "each word . . . should be construed to avoid rendering it superfluous" (Pl. Opp. at 9, quoting *Trannel v. Prairie Ridge Media, Inc.*, 987 N.E.2d 923 (Ill. App. Ct. 2013)), but then ignores that rule, asking this Court to read the word and very concept of "publicity"—the foundation of a right of publicity claim—out of the Illinois Right of *Publicity* Act.  Plaintiff's attempt to excise "publicity" from the right of publicity reveals the fundamental weakness of her claim.  In place of requiring any *public* "use or holding out", as the statute's text and basic rules of grammar require, Plaintiff asks the Court to find that "holding out" as used in the IRPA means only that a name was "represent[ed]" or "appeared" on some product—even if it had no relationship to the sale of the product.  Pl. Opp. at 9-10.

---

[1] Since filing this action, counsel for Plaintiff has filed four additional actions against Hearst in United States District Courts for the Southern District of New York (the "SDNY") under the right of publicity statutes of California, Ohio, Puerto Rico, and South Dakota arising from Hearst's list rental practices. *Burke v. Hearst Communications, Inc.*, No. 1:21-cv-08994 (S.D.N.Y., filed Nov. 2, 2021) (Cal. law); *Hicks v. Hearst Communications, Inc.*, No. 1:21-cv-09093 (S.D.N.Y., filed Nov. 3, 2021) (Ohio law); *Ramirez v. Hearst Communications, Inc.*, No. 1:21-cv-09109 (S.D.N.Y., filed Nov. 3, 2021) (P.R. law); *Powers v. Hearst Communications, Inc.*, No. 1:21-cv-09198 (S.D.N.Y., filed Nov. 8, 2021 (S.D. law). (Additional similar lawsuits have been filed in the SDNY against Hearst on behalf of other plaintiffs under state right of publicity statutes by other law firms, and against other publishers by Plaintiff's counsel and other law firms.)  Plaintiff's counsel is clearly seeking a foothold in this Court by which to attempt to expand a traditional right of publicity claim into some broader type of claim, for which state laws provide no remedy, much less statutory damages.

*Second*, Plaintiff limits her claim to the first prong of the IRPA's "commercial purpose" definition, hoping to avoid the requirement that her name be used to sell a separate product. She argues that her name need only appear "on . . . a product"—which Plaintiff argues to be the mailing list rather than the names and addresses that comprise the list—to impose liability under the IRPA, and not in connection with selling or promoting any product in any way. Again, Plaintiff ignores the clear dictates of the statute, which require that her name be used to sell a separate product.

## ARGUMENT

### A. Plaintiff Misconstrues the IRPA's "Public Use or Holding Out" Requirement

Plaintiff makes important concessions in her opposition. She does not dispute the absence of any allegation that her name was "communicat[ed] . . . to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Pl. Opp. at 10 (quoting *United Lab'ys Inc. v. Savaiano*, No. 06 C 1443, 2007 WL 4557095, at *10 (N.D. Ill. Dec. 21, 2007)). And Plaintiff does not dispute that there is no allegation that her name and address was "made out to be", represented, or used for anything other than what it is—her name and mailing address. In other words, there is no "publicity" to tie the use of Plaintiff's name to, and therefore Plaintiff's allegations do not plausibly suggest any claim under the IRPA.[2]

---

[2] Perhaps out of desperation, Plaintiff argues that even if she was required to allege that the use of her identity was "in connection with the offering for sale" of a "separate product", she has adequately alleged such facts because the hypothetical mailing list purportedly containing her name was related to *Plaintiff's prior* purchase of a subscription to *Good Housekeeping* magazine. Pl. Opp. at 17-18. Plaintiff's argument is unsupported by any applicable law and pushes her reading of the IRPA to—and over—the brink. *See also infra* n.11.

Plaintiff's only attempt to satisfy the IRPA's clear publicity requirement is her allegation that there is a website (not alleged to be a Hearst website) available "to the public at large" that informs the site's visitors that mailing lists are available from Hearst for rental by direct marketers. However, the site does not indicate or display in any way any name that might be included in those lists (Compl. Ex. A), let alone Plaintiff's name (which even she admits she was "unaware" of any purported inclusion, Compl. ¶ 35). In short, there is no "public use or holding out."

Plaintiff tries to avoid these fatal deficiencies in her pleading by arguing there is no publicity requirement with regard to "holding out" her name. As an initial matter, even if the phrase "holding out" as used in the IRPA did not require a "public" aspect—a position contrary to basic rules of grammar and statutory construction[3]—there is simply no allegation that Plaintiff's name was ever "held out" to *anyone*, in any way. And there's clearly no allegation that Plaintiff's name was held out publicly. Either way, Plaintiff provides no authority for her argument that the mere appearance of a name on a list amounts to the "holding out" of that name. *Trannel*, upon which Plaintiff relies, provides no support for her argument. That case clearly requires, consistent with the IRPA's purpose, some sort of *publicizing* or *publicity* to satisfy the "holding out" requirement. Notably, the "holding out" of the plaintiff's photograph in that case

---

[3] The adjective "public" modifies both "use" and "holding out". As the Illinois Appellate Court held in *Lyons Township ex rel. Kielczynski v. Village of Indian Head Park*, which was decided *after* the *Trannel* decision upon which Plaintiff relies, "[g]iven the commonly understood principles of grammar and usage, we find the legislature intended for the adjective 'oral' to modify both 'promise' and 'misrepresentation'. **The fact that the disjunctive term 'or' was used does not negate the legislature's ability to use one adjective to modify multiple nouns**." 84 N.E.3d 1118, 1126 (Ill. App. Ct. 2017) (emphasis added), *as modified on denial of reh'g* (June 23, 2017); *see also United States v. Stands Alone*, 11 F.4th 532, 535 (7th Cir. 2021) (adjective "forcibly" modified list of "six verbs separated by the disjunctive 'or'"); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 147-48 (2012).

-3-

involved distributing it to dozens of potential advertisers *on the cover of a media kit* "for purposes of *promoting [defendant's] services*." *Trannel*, 987 N.E.2d at 930 (emphasis added). Here, of course, there was no such "holding out"—Plaintiff's name did not appear in any media kit, was not distributed to advertisers, nor was it used for promotional purposes. Nothing in the *Trannel* decision suggests that the Illinois Supreme Court (or the *Trannel* court) would find the inclusion of a name and address as part of a mailing list, without more, to be the type of "holding out" contemplated by the Illinois legislature.[4] Indeed, the *Trannel* court specifically held, in the very language quoted by Plaintiff (Pl. Opp. at 9), that any "holding out" needs to be in connection with "certain activities" (such as the sale of other goods or services). More specifically, *Trannel* found a violation of the IRPA only where plaintiff's photograph was "held out *for purposes of promoting*" "an offering for sale of a product, merchandise, goods, or services." 987 N.E.2d at 930 (emphasis added). There are no such allegations in Plaintiff's Complaint. Including names on a mailing list, so that those renting it can send private mail to the persons listed, is simply not the sort of activity ("publicity") the IRPA is designed to protect.

    B.  *Plaintiff Has Not Alleged Any "Commercial Purpose" Under the IRPA*

In an attempt to avoid the weight of case law requiring a nexus between the use of Plaintiff's identity and the sale of a separate product, Plaintiff expressly disavows any reliance on the second prong of the IRPA's "commercial purpose" definition (which requires the use of

---

[4] Notably, dictionaries uniformly provide a definition of "holding out" in line with the goals of the IRPA, even if no "public" qualifier is applied: "*to represent to be.*" *See* Merriam-Webster, https://www.merriam-webster.com/dictionary/holding%20out. As the examples used by the *Trannel* court demonstrate, common usage of the phrase "holding out" with regard to a person's name will typically mean *publicizing* something about that person (even if not to the general public) that may or may not be true. *Trannel*, 987 N.E.2d at 930. Thus, it is a violation of law to hold oneself out as a lawyer or doctor if one is not a lawyer or doctor. *See, e.g.*, 225 Ill. Comp. Stat. 60/3.5(a) (making it a violation to "hold[] oneself out to practice as a physician without being licensed . . . .").

someone's identity "for purposes of advertising or promoting products", 765 Ill. Comp. Stat. 1075/5), and denies that the IRPA requires a connection between the identity purportedly being mis-used and the sale or promotion of some product (other than the name or identity at issue). Instead, Plaintiff argues that because, in her view, her name appeared "on" a mailing list, she has stated a claim under the IRPA, even though her name was not visible or known to anyone at the time of "sale" or used in any way in connection with that sale.

To be clear, and contrary to Plaintiff's suggestion, Defendant does not argue that the IRPA requires Plaintiff to allege that the use of her name suggests her personal endorsement of some product. Pl. Opp. 14-15.[5] But Plaintiff can point to no case—not even one—that was allowed to proceed based on the use of identifying information *not* in connection with the promotion of "'some other product,' *apart from the [plaintiff's] identity itself*." *Lukis*, 2020 WL 6287369, at *4 (emphasis added); *see also Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, 2017 WL 3720170, at *8 (N.D. Ill. Aug. 29, 2017) (citing J. Thomas McCarthy, 1 *Rights of Publicity and Privacy* § 5:19 (2d ed.) for the principle that a person's identity must be used "*to draw attention to a product* or advertisement" to state a claim (emphasis added)); *see also infra* n.8.[6]

---

[5] Of course, imposing liability absent some indicia of endorsement or connection with the advertisement of some product, but instead only because a name appears "on" a product, would be to impose liability here merely for the provision of truthful information—names and mailing addresses. Such a reading of the IRPA would clash head-on with the First Amendment, and the IRPA's own exemption (2). *See Lukis v. Whitepages Inc.*, No. 19 C 4871, 2020 WL 6287369, at *5 (N.D. Ill. Oct. 27, 2020) (exemption (2) should be "construed to align with First Amendment law—not as a matter of constitutional avoidance, but because the Illinois legislature meant to incorporate First Amendment concepts"); *see generally Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) ("the creation and dissemination of information are speech within the meaning of the First Amendment").

[6] Plaintiff suggests to this Court that the *Dobrowolski* and *Lukis* plaintiffs did not assert a claim under the first prong of the IRPA's "commercial purpose" definition and therefore those cases do not have "any bearing" on the issues in this case. Pl. Opp. at 15. Plaintiff misleads the Court. Neither of those plaintiffs even argued that their "identity profiles" themselves (rather than

That is because no such case exists.  Even *Trannel*, upon which Plaintiff relies heavily, is consistent with the weight of IRPA case law.⁷  That law requires that a plaintiff's "identity" be used in connection with the sale, advertisement, or "promotion" of some other product.  *Trannel*, 987 N.E.2d at 930 (finding IRPA violated where "the subject photograph was held out for purposes of *promoting [defendant's] services*" (emphasis added)).  There is no plausible reading of Plaintiff's allegations that would permit the Court to find that her actual identity was used to "promote" or sell or put into the stream of commerce *any other product* (whether publicly or to a single person).⁸

Plaintiff attempts to obfuscate the issue by arguing that the offer of a mailing list (as opposed to any actual names and addresses) is a violation, rather than identifying an actual

---

advertisements making use of those profiles) would be a violation of the IRPA—because they would not be.  And, contrary to Plaintiff's representation, the *Dobrowolski* plaintiff affirmatively cited both the first and second prongs of the IRPA in opposing a motion to dismiss in that case.  *See* Plaintiffs' Combined Opposition to Defendants' Motion to Dismiss, *Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406 (N.D. Ill. Nov. 29, 2017), ECF No. 54-1 at 7.

⁷ Plaintiff's reliance on *Ainsworth* similarly is misplaced.  *Ainsworth* is a classic common law misappropriation case.  In *Ainsworth*, a video of plaintiff installing tile appeared in a television commercial that a business owner used *to promote its tile installation business*.  The court reversed dismissal of the claim because "the use of plaintiff's image was for the purpose of advertising Century's products and services . . . ."  *Ainsworth v. Century Supply Co.*, 693 N.E.2d 510, 513 (Ill. App. Ct. 1998).  *Doe v. Flava Works*—an unpublished opinion of no precedential value—presented very different allegations than those asserted in this case:  there, the plaintiff asserted a claim based on the use of his image in pornographic films.  *Doe v. Flava Works, Inc.*, 2014 IL App (1st) 121491-U, 2014 WL 470638 (Ill. App. 2014) (unpublished).

⁸  Plaintiff's metaphysical attempt to separate names and addresses that comprise a mailing list and the mailing list itself to support her argument that her name and address are "on a product" defies logic.  As noted in Defendant's moving brief, the names and addresses contained within the mailing list are the product themselves.  Def. Br. at 6.  Nor does the mere fact that information is provided in exchange for money render that transaction or use a "commercial use", let alone a "commercial purpose" within the meaning of the IRPA.  *Cf., e.g.*, *Sorrel*, 564 U.S. at 567.

"public use or holding out"—however defined—of *Plaintiff's* name and identity.  Pl. Opp. at 12, 17.  This is wholly insufficient under the IRPA.[9]

Plaintiff's reliance on *Brown v. ACMI Pop. Division*, 873 N.E.2d 954 (Ill. App. Ct. 2007), in which singer James Brown brought an IRPA claim against a company that licensed stock photographs and images, does not support her argument.  The facts of *Brown* could not be more different than the facts alleged in this case.  As the trial court decision in *Brown* makes plain, Brown affirmatively alleged that his image was displayed online "in order to promote the selling of the copyrights" in photographs containing his images.  *Brown v. Corbis Corp.*, No. 02 L 005872, 2004 WL 5742324 (Ill. Cir. Ct. 2004), *aff'd sub nom, Brown v. ACMI Pop. Div.*, 873 N.E.2d 954 (Ill. App. Ct. 2007).  In other words, the case survived a motion to dismiss because Brown's image was being used *to sell another product*—a copyright license.[10]  This is precisely

---

[9] Plaintiff argues that treating direct mailing lists as private contracts (Def. Br. at 9) would read the exclusion for creative works out of the IRPA and make that exclusion "superfluous."  Pl. Opp. at 11.  To adopt a phrase from Plaintiff, this argument is "nonsense".  The list of formats that the creative works subject to that exclusion may take illustrates that they are all the type of material that would be *available* for viewing by the public at large in identical form, like any other products offered for public sale but purchased individually.  To be sure, creative works are often mass-produced and mass-marketed.  Moreover, exemptions (1), (2), and (3) each exclude from the IRPA's coverage certain categories of speech that would be covered by the First Amendment.  *See, e.g.*, *Lukis*, 2020 WL 6287369 at *4-5.

[10] The defendant in *Brown* argued that the copyright license was not a "product", but an intangible property interest.  The Court held that the copyright itself was, for purposes of the IRPA, a product, and that the image of Brown was used to sell the product. 873 N.E.2d at 961-962.  Although the *Thompson v. Getty Images (US), Inc.* court later took issue with *Brown*'s finding that the photo license at issue was an appropriate "separate product", No. 13 C 1063, 2013 WL 3321612, at *4 (N.D. Ill. July 1, 2013), Plaintiff's complaint does not even allege that her identity was used to sell or promote *any* separate product.  Instead, she erroneously asserts that the "product" is the mailing list, but does not and cannot allege that her name and address were used to sell that mailing list—only, at best, that information about the existence of a generic mailing list was made available by a third party, Nextmark.  *See, e.g.*, Compl. ¶ 27, Ex. A.  As a result, neither her reliance on *Brown*, nor her attempt to distinguish *Thompson* itself (Pl. Opp. at 15), do anything to bolster her opposition.

the sort of allegation missing from Plaintiff's Complaint. Plaintiff's Complaint should be dismissed for failure to state a claim under the IRPA.

## CONCLUSION

Under Plaintiff's tortured reading of the IRPA—which would require neither a connection to the sale of a separate product nor any "public" display of Plaintiff's identity—an old-fashioned phone book containing only names and addresses would violate the IRPA, absent written consent from every person identified therein.[11] This cannot be a violation of the IRPA, and the IRPA cannot mean what Plaintiff says it means. For all the reasons set forth herein and in Hearst's opening brief, the Complaint should be dismissed with prejudice, and Hearst awarded attorney's fees and other costs of defense pursuant to 75 Ill. Comp. Stat. 1075/55.

---

[11] The list of absurd results that would arise from Plaintiff's statutory interpretation could go on for pages. For example, it would prevent Plaintiff from telling her friend Kate that their mutual friend Beth Smith recently purchased a new car—Plaintiff would be "holding out" Beth's name "in connection with" the sale of a product. It would prevent her mailing a birthday card to Beth because she would be "holding out" Beth's name and address "on . . . a product"—the birthday card—that she had previously purchased. Plaintiff's reading of the IRPA is nothing short of ridiculous. Plaintiff's hail-Mary argument that her prior purchase of a *Good Housekeeping* subscription renders the inclusion of her name in a mailing list as "in connection with a sale" is similarly nonsensical.

| | | |
|---|---|---|
| Dated: | November 23, 2021 | By: /s/ Andrea R. Butler |

                Jonathan R. Donnellan
                Andrea R. Butler
                Kristen L. Hauser
                THE HEARST CORPORATION
                Office of General Counsel
                300 West 57th Street, 40th Floor
                New York, NY 10019
                Tel: (212) 649-2484
                Fax: (212) 554-7000
                abutler@hearst.com
                khauser@hearst.com

        By: /s/ Harold C. Hirshman

                Harold C. Hirshman
                DENTONS US LLP
                233 South Wacker Drive, Suite 5900
                Chicago, IL 60606-6361
                Tel.: (312) 876-8025
                Email: Harold.hirshman@dentons.com

*Attorneys for Defendant Hearst Communications, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above document filed through the ECF system will be sent electronically to counsel of record on November 23, 2021.

/s/ Andrea R. Butler
Andrea R. Butler